09-1281-cv
Beleson v. Schwartz

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 5ᵗʰ day of April, two thousand eleven.

Present:    ROBERT D. SACK,
            ROBERT A. KATZMANN,
            RICHARD C. WESLEY,
                        *Circuit Judges*.

_____

ROBERT BELESON, on behalf of himself and all others similarly situated, HARVEY MATCOVSKY, on behalf of himself and all others similarly situated, MARIA M. PFUSTERER, CHRIS, DAVID A. HULL, MARVIN RICH,

                    *Consolidated Plaintiffs*,

HAROLD SHAPIRO,

                    *Plaintiff-Appellant*,

TONY CHRIST, individually and as custodian for Brian and Katelyn Christ,

                    *Objector*,

CASEY CRAWFORD, individually and on behalf of all others similarly situated,

                    *Plaintiff*,

THOMAS ORNDORFF, individually and on behalf of all others similarly situated,

                    *Objector*.

BERNARD SCHWARTZ,

*Defendant-Appellee*,

RICHARD J. TOWNSEND,

*Consolidated Defendant.*[*]

For Plaintiff-Appellant: JOSEPH H. WEISS (Richard A. Acocelli, Julia J. Sun, *on the brief*), Weiss & Lurie, New York, N.Y.

For Defendant-Appellee: FRANCIS J. MENTON, JR. (Russell D. Morris, Kristin McNamara Pauley, *on the brief*), Willkie Farr & Gallagher LLP, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Marrero, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** and the case is **REMANDED**.

Plaintiff-Appellant Harold Shapiro appeals from the February 27, 2009 judgment of the United States District Court for the Southern District of New York (Marrero, *J.*) granting Defendant-Appellee Bernard Schwartz's motion for summary judgment. We assume the parties' familiarity with the facts and procedural history of the case.

Plaintiffs brought class-action claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . , any

---

[*] The Clerk of the Court is directed to amend the caption as set forth above.

manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ." 15 U.S.C. § 78j(b). Rule 10b-5 prohibits "mak[ing] any untrue statement of a material fact or . . . omit[ing] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). "Under the law of this Circuit, to state a claim under Rule 10b-5, a plaintiff must allege that, in connection with the purchase or sale of securities, the defendant made material misstatements or omissions of material fact, with scienter, and that the plaintiff's reliance on the defendant's actions caused injury to the plaintiff." *Slayton v. Am. Express Co.*, 604 F.3d 758, 765 (2d Cir. 2010). Section 20(a) creates joint and several liability for "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter." 15 U.S.C. § 78t(a). We review *de novo* the district court's grant of summary judgment, which will be granted only if there are no genuine issues as to any material facts, drawing all inferences in favor of the nonmoving party. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010).

Plaintiff first contends that the district court erred in focusing on allegations of material omissions, while ignoring allegations of affirmative misrepresentations in the July 1, 2003 *Reuters* article. Plaintiff points to three allegedly false statements attributable to Schwartz that appear in that article: (1) that Loral was "'on plan' to have $65 million in cash" at the end of the year; (2) that "the important thing for Loral [wa]s to be ready for an [sic] recovery in satellite manufacturing and telecommunications"; and (3) that "Loral was up-to-date with payments to its note holders and its banks, and could still have made June payments without the $55 million" it

3

received from Intelsat for the Orbitals transaction. Br. for Pl.-Appellant 24 (quoting J.A. 66).[1]

We discuss each statement in turn: Plaintiff has pointed to nothing beyond conjecture to support the falsity of Schwartz's claim that Loral was "on plan" to have $65 million in cash by year-end; Loral did in fact end the year with $140 million in cash. Nor has plaintiff provided evidence going to the falsity of the statement that Loral was endeavoring to be ready for a market recovery, and in any event it could be argued that the satellite sale and corresponding voluntary bankruptcy were strategies aimed at preserving the company's long-term survival. Finally, plaintiff argues that it was "categorically untrue" that Loral could have made the June payments without the $55 million it received from Intelsat. Br. for Pl.-Appellant 27. However, in support of this contention, plaintiff points to a cash flow forecast that, according to Richard Townsend, Loral's Executive Vice President and Chief Financial Officer, was prepared based on the "specific assumptions and requirements" of the bank syndicate and was "not necessarily consistent" with what Loral believed. Br. for Def.-Appellee 20 n.3 (quoting Confidential App'x 104-05). Because we conclude that none of the three purported misrepresentations in the July 1 article was false, we do not need to reach whether they were material.

Plaintiff next argues that Schwartz had a duty to disclose Loral's lack of viability and impending bankruptcy because his failure to disclose the satellite sale negotiations with Intelsat and the related contingency bankruptcy plans "rendered Loral's Class period public statements

---

[1] To the extent that plaintiff argues that these statements were materially false because they would have been understood "to mean that Loral would remain viable until at least year-end and that it was committed to shareholder value," Br. for Pl.-Appellant 24-25, this is an interpretation of the statements that goes to whether they were misleading "in the light of the circumstances under which they were made," 17 C.F.R. § 240.10b-5(b), and not to whether the statements were, in fact, false.

4

materially incomplete and, thus, misleading." Br. for Pl.-Appellant 29. To determine materiality, "we look to whether there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). We have stated that "[w]hen contingent or speculative events are at issue, the materiality of those events depends on 'a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.'" *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 180 (2d Cir. 2001) (quoting *Basic*, 485 U.S. at 238).

Based on the totality of the available information and the circumstances of the Loral bankruptcy, we conclude that Schwartz was not required to disclose this information because it was not material. Notwithstanding the positive business developments reported in the statements upon which plaintiff relies, the market was adequately informed of the dire nature of Loral's financial condition. For example, Loral's 2002 Form 10-K, which was issued on March 31, 2003, revealed that Loral had experienced large losses of approximately $66.2 million in 2000, $128.5 million in 2001, and $502.4 million in 2002, as well as a decline in cash reserves from $159.9 million in 2001 to $65.9 million in 2002. It was well known that Loral had $2.2 billion in debt, while its common stock — which was in danger of being delisted from the New York Stock Exchange — was worth only $111 million at the start of the class period, for a debt-to-equity ratio of almost twenty-to-one. The 10-K also warned that if Loral's "business plan does not succeed, [its] operations might not generate enough cash to pay [its] obligations and fund

5

[its] operations." J.A. 71. In April 2003, the *Wall Street Journal* reported that Loral's bonds were "junk-rated," J.A. 115, while some analysts were predicting that "if results were to slide further, the company would be challenged to sustain its present capital structure," J.A. 105, and "the heavily leveraged company will be unable to avoid another Chapter 11 bankruptcy filing," J.A. 118. Finally, the satellite sale and resulting bankruptcy were not finalized until immediately before they were publicly announced. Accordingly, in light of this "total mix" of information, we conclude that the district court did not err in concluding that Schwartz had not omitted a material fact. Because we affirm the district court's dismissal of the section 10(b) claim on the aforementioned grounds, we need not reach defendant's remaining arguments.

Because we affirm the district court's conclusion that there was no violation of section 10(b), we also affirm the district court's conclusion that the section 20(a) claim should be dismissed for want of a primary violation.

We have considered plaintiff's remaining arguments and find them to be without merit.[2] However, it appears that the district court did not make the mandatory Rule 11(b) findings required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(c)(1). *See Rombach v. Chang*, 355 F.3d 164, 178 (2d Cir. 2004) (remanding where the district court did not make the required findings). Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**, and the case is **REMANDED** for compliance with the PSLRA.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[2] We have also reviewed evidence appearing in the Confidential Appendix, which supports our conclusion, but we refrain from citing or quoting to any sealed portion of the record that does not otherwise appear in the parties' redacted briefing.

6